UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ANTHON CORDELL HUBBARD, | ) | CASE NO. 1:13 CV 2393 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| DR. KIM SANDERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is *pro se* Plaintiff Anthon Cordell Hubbard's above-captioned *in forma pauperis* Complaint. Plaintiff names Dr. Kim Sanders and Correctional Officer Ortiz as Defendants. He seeks $18,000.00 from each Defendant. For the reasons set forth below, the action is dismissed.

*Background*

Plaintiff was arrested and held at Cuyahoga County Jail on September 22, 2013. Three days later, he met with Defendant Sanders to discuss medication he was allegedly prescribed for "bipolar/anxiety mood disorder/depression and anti social personality disorder." (Doc. No. 1 at 1).

He claims Dr. Sanders advised that his medication was not "mandatory" for treatment of his condition.

On October 7, 2013, Plaintiff states he had a "mental health crisis" at the jail. *Id.* He claims he began to hear voices in his head. During the course of this experience, Defendant Ortiz handed him a pair of eyeglasses, "which I had thrown away so I would not harm myself with them." (Doc. No. 1 at 2). Plaintiff threw the glasses back at Ortiz, notifying him that he was having a "mental health crisis." *Id.* Instead of calling for medical help, Ortiz allegedly began to laugh and ridicule Plaintiff, making odd gestures toward him and bird calls. Plaintiff concludes that if Ortiz had not returned the glasses to him "I would not have been able to slit my wrist with them." *Id*.

Plaintiff further alleges Sanders failed to explain the "importance or effects of me not taking my medications." *Id*. Normally, Plaintiff claims he takes 4 mg of Risperdol to avoid episodes similar to what he experienced at the jail on October 7, 2013. He argues that Sanders should have "prescribed my medications instead of guessing and using general medical procedure." (Doc. No. 1 at 1). Moreover, he claims Ortiz aggravated his condition by making strange gestures and increasing his level of paranoia.

*Standard of Review*

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss any claim under 28 U.S.C. §1915(e) if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to 28 U.S.C.

§1915(e).

*Jurisdiction*

Before reaching the merits of a case, a federal court is obliged to ensure it enjoys subject matter jurisdiction to hear it. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-431(2007)("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (internal quotation marks omitted); *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir.1999) (courts must examine the basis for the exercise of federal subject matter jurisdiction). Lack of subject matter jurisdiction may be raised at any time. *Giles v. Nylcare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir.1999).

Plaintiff does not set forth any jurisdictional basis for filing his Complaint in this Court. While he cites "47 U.S.C. 553" on his Civil Cover Sheet, the statute has no relevance to the facts alleged in the Complaint as it is titled: "Unauthorized reception of cable service."

Considering Plaintiff's *pro se* status, as well as the nature of his allegations, his claims could be construed as asserting a violation of his civil rights pursuant to 42 U.S.C. § 1983. Even liberally construing the allegations in his Complaint under section 1983, the Court finds he has failed to state a claim for federal relief.

*Constitutional Right to Adequate Medical Care*
*Pre-Trial Detainee*

To establish a claim under 42 U.S.C. § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992).

The Due Process Clause of the Fourteenth Amendment provides a pre-trial detainee with a

right to adequate medical treatment "that is analogous to prisoners' rights under the Eighth Amendment." *Gray v. City of Detroit*, 399 F.3d 612, 615–16 (6th Cir. 2005). A detainee's right is violated "when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001). The Supreme Court has explained that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104(1976); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004). A prison inmate's complaint "that a physician has been *negligent* in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment," however. *Estelle*, 429 U.S. at 106.

There is an objective and a subjective component to a deliberate indifference claim. The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834. The Sixth Circuit has recognized that "[a] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897. The subjective component requires that the accused have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, a plaintiff must show that the prison official "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir.2009) (quoting *Comstock*, 273 F.3d at 703). The subjective component is intended "to prevent the constitutionalization of medical malpractice claims." *Id*. (internal quotations omitted).

Plaintiff does not allege that prior to his detention, a physician mandated that he take a daily

dosage of his medications. Moreover, he does not allege that his behavior, at the time he was examined by Sanders, made it obvious to even a layman that he had serious medical needs. Therefore, Plaintiff has failed to allege the Defendants should have objectively been aware that he suffered from a serious medical need.

With regard to the subjective component, Plaintiff must show that the Defendants were aware of his serious medical need and were deliberately indifferent to it. *Farmer*, 511 U.S. at 834. Without establishing that he had a serious medical need, Plaintiff cannot allege the Defendants disregarded his medical care. Even if, as Plaintiff suggests, he slit his wrist because he was not taking Risperdol, he does not allege the Defendants failed to treat his injury. Furthermore, there is no allegation they denied him access to medications that would avoid suicide attempts in the future.

Assuming the truth of Plaintiff's allegations, Sanders advised him that his medications were not "mandatory." Plaintiff challenges this advice because he believes his medications were mandatory and, thus, her recommendation was "negligent." As noted above, this does not establish a civil rights violation. It is insufficient for Plaintiff to simply allege the Defendants *should have known* he would attempt suicide, he must also show they knew he had a serious medical condition. *See Watkins*, 273 F.3d at 686.

Plaintiff does not allege Ortiz had any knowledge of a serious medical need. Although he claims he told Ortiz he was hearing voices, there is no allegation Ortiz knew Plaintiff suffered from any serious psychological condition. Moreover, there is no allegation Ortiz was ordered to monitor Plaintiff's behavior. Without knowing Plaintiff had a serious medical need, Ortiz could not have

the culpable state of mind to know Plaintiff would harm himself and then disregard that knowledge.[1]

*Conclusion*

Based on the foregoing, Plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. No. 2) is granted and the Complaint is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

        s/ Christopher A. Boyko
        CHRISTOPHER A. BOYKO
        UNITED STATES DISTRICT JUDGE

DATED: May 21, 2014

---

[1] The Court notes that sixteen days after Plaintiff's alleged suicide attempt he appeared before the Court of Common Pleas, with counsel, for his arraignment on October 23, 2013. Although the docket reveals Judge Corrigan ordered Plaintiff to have "no contact with victim," there is no reference to any medical needs or issues.

[2] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."